UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
PECOS DIVISION

| | | |
|---|---|---|
| PETER I. SHAH, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | Civil Action No. 4:25-cv-39-DC |
| v. | § | |
| | § | |
| MAPLE ENERGY HOLDINGS, LLC, | § | |
| RIVERSTONE HOLDINGS, LLC, | § | |
| CHRISTOPHER A. ABBATE, | § | |
| VITAL ENERGY, INC., | § | |
| REEVES COUNTY SHERIFF | § | |
| | § | |
| *Defendants.* | § | |

## DEFENDANT VITAL ENERGY, INC.'S
## MOTION FOR SANCTIONS

Defendant Vital Energy, Inc. ("Vital") files this Motion for Sanctions under Federal Rule of Civil Procedure 11 and the Court's inherent power against *pro se* Plaintiff Peter I. Shah ("Shah") and respectfully shows as follows:

## I.    PRELIMINARY STATEMENT

Pro se litigants have no "license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986). Despite this, Shah has repeatedly used the federal court system to harass Vital and others with baseless and abusive litigation. Courts have labeled Shah a "vexatious litigant," noted his "extraordinary litigiousness," and rejected his arguments as "egregious."

Vital is Shah's latest target—and Shah will not stop. Shah has sued Vital three times— and *twice* federal courts have dismissed Shah's claims against Vital (and even more times dismissed his claims against others). Pending before this Court is now a *third* motion to dismiss Shah's *third* case against Vital. This time, Shah revives theories the Court previously and

explicitly rejected—and which Shah did not appeal. For example, in its latest dismissal order, the Court specifically told Shah he has *no* claim against Vital:

> Plaintiff has failed to establish Article III standing in this case because he cannot "fairly trac[e]" an injury to the allegedly unlawful conduct of Defendant Vital Energy, Inc. *At no point did Shah's ownership of the property overlap with Vital's operations ….* Plaintiff's ownership in the land transferred to Maple Holdings, LLC seven months prior to Vital obtaining any interest in the land.

ECF No. 140, *Shah v. Maple Energy Holdings, LLC, et al.* (hereinafter, "Shah I"), A:23-CV-00819-DC, at *5-6 (W.D. Tex. Sept. 30, 2025) (emphasis added).[1] Yet two weeks later, Shah sued Vital again, raising the *same* argument this Court had just rejected—that Vital *should* be liable because Vital *now* conducts oil-and-gas operations on property Shah *previously* owned. But this is not a basis to sue Vital—and Shah knows it—because "[a]t no point did Shah's ownership of the property overlap with Vital's operations." *Id.* A person cannot lose or sell a property; wish he still owned it; and then sue subsequent owners for alleged injuries occurring only after that person's ownership ended. Shah will not take this Court's ruling or the law for an answer.

Shah's endless effort to wrap Vital into a dispute it has nothing to do with is frivolous, improper, and harassing. In accordance with Federal Rule of Civil Procedure 11's safe harbor, Vital has presented this Motion to Shah and asked that Shah retract his claims against Vital. Shah has not done so. Sanctions are now the last resort, and they are warranted.

*     *     *

For years, Shah has pursued a litigation odyssey against varying targets pertaining to 20.40 acres of surface property in Reeves County, Texas (the "Property") that Shah *formerly* owned. Vital has nothing to do with Shah's grievances. *Shah knows this.*

---

[1] Vital requests that the Court take judicial notice of the case filings cited in this Motion and the filings in this case. *See* Fed. R. Evid. 201.

---

In 2022, Shah sued Maple Energy Holdings, LLC ("Maple") and Riverstone Holdings, LLC ("Riverstone"), alleging that Maple and Riverstone engaged in "unauthorized oil and gas operations" that allegedly damaged the Property. *Shah I*, at ECF No. 1 at 4. Shah owned the Property at that time. *Id.* Much has changed since.

Maple sued Shah in Texas state court, "seeking a declaration of its rights as mineral lessee[.]" *Shah I*, at ECF No. 112 at 4.[2] The state court granted Maple declaratory relief, ruling that Maple has "the right to use as much of the surface estate of the Shah Property as is reasonably necessary" for its oil and gas operations. *Maple Litigation*, 2023 WL 4879905, at *4. It also awarded Maple attorneys' fees and rejected Shah's claims of attorney misconduct.[3] *Id.* at *13-14. When Shah did not pay the fee judgment, Maple exercised its enforcement remedies, and "Shah conveyed the [Property] to Maple by Sheriff's Deed on March 7, 2023." *Shah I*, at ECF No. 112 at 1 n.1; *see* ECF No. 1-9 at 2-4 (Sheriff's Deed). Vital was not involved in the Maple Litigation.

Instead, *months later*—when *Maple*, not Shah, owned the Property—Vital acquired oil and gas interests that allow Vital to access and conduct oil and gas operations on the Property. ECF No. 1 at ¶¶ 23, 30. Maple still owns the Property today, and "[a]t no point did Shah's ownership of the property overlap with Vital's operations." *Shah I*, at ECF No. 140 at 5-6.

On this basis alone, Shah has sued Vital not once, not twice, but now *three* times. The New Jersey District Court dismissed Shah's claims against Vital for lack of jurisdiction. ECF Nos.

---

[2] *See Shah v. Maple Energy Holdings, LLC* ("Maple Litigation"), No. 08-22-00198-CV, 2023 WL 4879905 (Tex. App.—El Paso July 31, 2023, pet. denied) (mem. op.), Appx.001-017.

[3] Ever since, Shah has repeatedly asserted his rejected attorney-misconduct claims, and multiple courts have rejected them. *See Shah I*, at ECF No. 139 at 19-20 (this Court recounting the history).

---

30-31, *Shah v. Turner, et al.* ("Shah II"), No. 24-5988 (D.N.J. Jan. 7, 2025). This Court in *Shah I* dismissed Shah's claims against Vital because:

- Texas law required Shah to "assert some injury during the time in which he owned the land"; but

- "[a]t no point did Shah's ownership of the property overlap with Vital's operations"; and, so,

- Shah could not "fairly trace" any of his alleged injuries to Vital.

*Shah I*, at ECF No. 140 at 5-6. Nothing about these undisputed facts or the law have changed. *See* ECF No. 1 at ¶¶ 23, 30 (Shah pleading same facts).

Yet Shah has sued Vital *again*—on the same grounds the Court previously rejected. As set forth in Vital's motion to dismiss, *nothing* about Shah's re-pleaded theories have merit.

Shah's pleadings are instead frivolous, harassing, and groundless. State and federal courts have noted Shah's "extraordinary litigiousness" before.[4] This Court should do the same and, pursuant to Rule 11 and the Court's inherent power, order one or more of the following sanctions: (1) order Shah to pay a penalty into the Court and prohibit filings until the penalty is paid; (2) order Shah to pay Vital its reasonable and necessary attorneys' fees; (3) issue a warning that future frivolous pleadings will be met with additional, more severe sanctions; and/or (4) order Shah to show cause why he has not violated Rule 11(b).

## II.   BACKGROUND

Vital incorporates by reference (1) its motion to dismiss, and (2) Maple's motion to sanction Shah, ECF Nos. 11, 15. Vital further restates as follows:

**A.   Maple acquired certain oil and gas interests in Texas.**

In 2021, Maple purchased certain oil and gas assets in West Texas from MDC Energy LLC

---

[4] *Shah v. Turner*, No. 24-05988, 2025 WL 40164, at *5 (D.N.J. Jan. 7, 2025) (ECF No. 129-1); *see also infra* and ECF No. 15.

---

**Defendant Vital Energy, Inc.'s Motion for Sanctions** **Page 4**

and affiliated debtors, including oil and gas leases ("Leases") that cover the Property (and other property). *See* ECF No. 1 at ¶ 13. Maple purchased the assets under an Asset Purchase Agreement, which the United States Bankruptcy Court for the District of Delaware approved. *Maple Litigation*, 2023 WL 4879905, at *1-2; *In re MTE Holdings LLC*, No. 19-12269 (Bankr. D. Del.); *In re MDC Energy LLC*, No. 19-12385 (Bankr. D. Del.).[5]

Shah alleges that he owned the Property at this time. ECF No. 1 at ¶ 2. The Leases covered the Property and, as a result, Maple held the right to conduct oil and gas operations on the Property. *Maple Litigation*, 2023 WL 4879905, at *1-2, 8-9.

## B.    Shah and Maple engaged in litigation regarding Maple's oil and gas operations.

Although Maple had the right to conduct operations on the Property due to the Leases, Maple—as oil and gas well operators often do to avoid disputes—attempted to negotiate a surface-use agreement with Shah. *See, e.g.*, ECF No. 1 at ¶ 14; ECF 1-6. But Shah accepted none of Maple's efforts and instead interfered.

### 1.    The Texas Maple Litigation.

In Texas state court, Maple sued Shah for "(1) a declaratory judgment that it had the right to use the surface estate as necessary to conduct its oil and gas operations under its mineral leases; (2) an injunction to prevent Shah from continuing to interfere with its rights under the leases; and (3) an attorney's fees award." *Maple Litigation*, 2023 WL 4879905, at *2-3. On September 22, 2022, the Texas trial court entered summary and final judgments for Maple and awarded Maple its attorneys' fees. *Id.* at *4; Texas Final Judgment, Appx.018-023. The same day, the court

---

[5] Shah filed an administrative claim in the bankruptcy case, which the bankruptcy court denied. *See Maple Litigation*, 2023 WL 4879905, at *1-2; ECF No. 1169, *In re MTE Holdings LLC*, No. 19-12269 (Bankr. D. Del. June 8, 2020).

denied Shah's motion to sanction Maple's attorneys. *Maple Litigation*, 2023 WL 4879905, at *4; *see* Appx.024-025.

On July 31, 2023, Texas's Eighth Court of Appeals affirmed the merits judgment, substantially affirmed the fee award, and rejected Shah's claims of attorney misconduct. *Maple Litigation*, 2023 WL 4879905, at *12-13. The court suggested a minor remittitur of $9,738, which Maple accepted. *Shah v. Maple Energy Holdings, LLC*, 676 S.W.3d 820 (Tex. App.—El Paso Aug. 31, 2023, no pet.) (mem. op.), Appx.026-028.

On August 31, 2023, the Eighth Court of Appeals issued a second Judgment that applied the remittitur, reducing the fee judgment to $85,416.50. ECF No. 1-8; *see* Judgment, Appx.029-030. Shah appealed, but the Texas Supreme Court denied review. *See* Appx.031-032.

### 2. *Shah I.*

Separately, Shah sued in federal court. In the *Shah I* proceeding—which originated in the New Jersey district court—Shah sued Maple, Riverstone, and the Texas Railroad Commission, raising surface-access disputes. *Shah I*, at ECF No 1. After the New Jersey court transferred the case here, all defendants moved to dismiss. *Shah I*, at ECF Nos. 72-73, 89-90.

### C. Shah failed to pay a Texas judgment for Maple, Maple obtained a writ of execution, and a Texas sheriff sold the Property to Maple.

After final judgment issued in the Maple Litigation, Shah did not pay the fee judgment. Nor did Shah file a supersedeas bond to stay execution of the judgment during appeal. *See* Tex. R. App. P. 24; *see* Docket Sheet from Maple Litigation, Appx.268-69.

Accordingly, Maple obtained a writ of execution. *See* ECF No. 1-9; Sheriff's Deed, Appx.033-036. The Reeves County Sheriff seized the Property and, on March 7, 2023, offered it for sale at a public auction. Appx.033-036. Maple purchased it. *Id.*

Over seven months after the foreclosure sale, Maple conveyed certain oil and gas assets to Vital—but <u>not</u> the Property.  *See* Decl. of Nathan Morrison, Appx.052-055; Recorded and Certified Copy of Assignment and Bill of Sale, Appx.056-136; *see* ECF No. 1 at ¶¶ 23, 30, 52.

**D.     Shah filed *Shah II* in a New Jersey district court—adding Vital as a target—and the court dismissed, noting Shah's "extraordinary litigiousness."**

On May 10, 2024, Shah filed another complaint in the New Jersey district court.  *See Shah II*, at ECF No. 1, Appx.037-051.  Shah alleged that the non-Vital defendants—Maple, Riverstone, Christopher Abbate, and their B&G counsel—"initiated and perpetrated" a "real property and personal property fraud[.]"  Appx.044.  Like here, Shah sued Vital for unjust enrichment, only because Vital had acquired—months after the Sheriff's Sale—the right to conduct oil and gas operations on the Property.  Appx.048-051.

On January 7, 2025, the New Jersey court dismissed Shah's complaint for lack of subject matter jurisdiction and due to collateral estoppel.  *See Shah II*, at ECF No. 129-1.

**E.     This Court in *Shah I* also dismissed Shah's claims after affording him multiple opportunities to replead.**

Meanwhile in *Shah I*, this Court afforded Shah many chances to state his claims.  *See Shah I*, at ECF Nos. 112, 130.   Shah filed his Second Amended Complaint in *Shah I* on February 28, 2025.  *Shah I*, at ECF No. 131.

Relevant here, this pleading maintained defective theories against Vital.  In six "Counts," Shah alleged that Vital's oil and gas operations were misusing and damaging Shah's "former" Property, but Shah again acknowledged that, when *Vital* "[e]ntered" the picture, Shah no longer

owned the Property.  *Id.* at 8-9, 20-21.  Shah also admitted that Vital had no involvement in the acts or omissions he claimed that others committed *when* Shah owned the Property.  *Id.* at 11-20.

**F.**      **This Court dismissed Shah's claims against Vital for lack of standing.**

On September 30, 2025, this Court dismissed Shah's claims against Vital for lack of standing and dismissed Shah's claims against other defendants.  *Shah I*, at ECF Nos. 139-140.  As to the claims against Vital, the Court reasoned:

> It is impossible for Shah to "fairly trac[e]" any injury related to the former Shah property [to Vital] because Vital did not conduct operations on the land until well after Maple obtained full ownership of the property.

*Shah I*, at ECF No. 140 at 6.  Shah did not appeal.

**G.**      **Two weeks later, Shah sued Vital again.**

Instead, two weeks later, Shah filed a new suit, alleging the same or similar "damages" claims.  ECF No. 1.  Against Vital, Shah alleges:

- Breach of "Actual Promised Damages."  Shah claims that *other parties*— "Maple, Riverstone, and Abbate"—offered to pay Shah $350,000 for "damages" regarding "*their* oil and gas" operations, but Shah includes Vital in the claim's header, *id.* at p. 15 & ¶ 54 (emphasis added); and

- Unjust Enrichment.  Shah alleges that Vital is "using" the Shah property "without paying promised damages" and is thus "being unjustly enriched … from the Shah's property," *id.* ¶ 64.[6]

But Shah still concedes that his ownership and Vital's operations never overlapped.  *E.g.*, *id.* ¶ 23.

**H.**      **Numerous courts have noted Shah's vexatious litigation and frivolous claims.**

Unsurprisingly, numerous courts—state and federal—have labeled Shah a vexatious litigant or noted his frivolous claims and harassing use of the court systems.  For example:

---

[6] Shah previously pleaded an unjust enrichment claim against Vital in his First Amended Complaint in *Shah I*.  *Shah I*, at ECF No. 113 at 30.  After Vital moved to dismiss, Shah dropped it in *Shah I*, but he revived it again in this case.  In other words, beyond the obvious defects inherent in the claim, Vital already full briefed and told Shah why that claim otherwise failed.

- The Eighth Court of Appeals noted that "Shah has raised many frivolous issues both in the trial court and on appeal, the circumstances of which are egregious …."; and

- The New Jersey District Court commended that, "[c]learly [Mr. Shah's] litigiousness surrounding the Former Shah Property (and beyond) can only be described as unrelenting and abusive." *Shah II*, 2025 WL 40164, at *10.

This Court should do the same.

### III.    ARGUMENT

**A.    Rule 11 and the Court's inherent power supports sanctions.**

Federal law provides courts multiple bases to sanction litigants who abuse the federal court system—including Rule 11 and the Court's inherent authority.  Under either basis, "one acting *pro se* has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *Farguson*, 808 F.2d at 359.  Relevant here, "sanctions may be appropriate when a *pro se* litigant has a history of submitting multiple frivolous claims." *Ratcliff v. Tex.*, No. 9:15-CV-106, 2017 WL 9325347, at *5 (E.D. Tex. Feb. 13, 2017), report and recommendation adopted, No. 9:15-CV-106, 2017 WL 907992 (E.D. Tex. Mar. 7, 2017), *aff'd*, 699 Fed. Appx. 410 (5th Cir. 2017).

#### 1.    Rule 11.

Rule 11 permits the Court to impose an appropriate sanction if a pleading, motion, or other paper is presented for any improper purpose, such as to harass or needlessly increase the cost of litigation, or if the claims or arguments therein are frivolous. *See* Fed. R. Civ. P. 11(b). Relevant here, Rule 11 specifically provides as follows:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1)     it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2)     the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3)     the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4)     the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).  "[T]he central purpose of Rule 11 is to deter baseless filings in district court and thus ... streamline the administration and procedure of federal court."  *Phillips v. Austin Diagnostic Surgery Ctr.*,  No. AU-17-CV-940-SS, 2018 WL 1128147, at *1 (W.D. Tex. Mar. 1, 2018) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990)).

When sanctions are warranted, a court has a variety of choices—it can impose "directives of a nonmonetary nature, an order to pay a penalty into court, or ... an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation."  *Annamalai v. Moon Credit Corp.*, No. CV H-16-1277, 2017 WL 5646925, at *4 (S.D. Tex. Apr. 21, 2017); *see* Fed. R. Civ. P. 11(c)(2), (c)(4).   On its own, the court may also order Shah to show cause why he has not violated Rule 11(b).  *see* Fed. R. Civ. P. 11(c)(3).

**2.      Inherent power.**

The Court also possesses inherent power to "protect the efficient and orderly administration of justice ... to command respect for the court's orders, judgments, procedures, and authority." *In re Stone*, 986 F.2d 898, 902 (5th Cir. 1993).  Included in this inherent power is "the power to

levy sanctions in response to abusive litigation practices." *See Mendoza v. Lynaugh*, 898 F.2d 191, 195–97 (5th Cir. 1993); *e.g.*, *Ratcliff*, 2017 WL 9325347, at *2.

**B.      Shah's claims against Vital are frivolous, brought only for harassment, and without any basis in law or fact.**

This Court should exercise its sanction power here because Shah's claims are frivolous, harassing, and without a basis in law or fact—and this *is* Shah's pattern and practice.

In his latest iteration, Shah states two "Counts" against Vital:

- Breach of "Actual Promised Damages." Shah claims that *other parties*—"Maple, Riverstone, and Abbate"—offered to pay Shah $350,000 for "damages" regarding "*their* oil and gas" operations, but Shah includes Vital in the claim's header, ECF No. 1 at p. 15 & ¶ 54 (emphasis added); and

- Unjust Enrichment. Shah alleges that Vital is "using" the Shah property "without paying promised damages" and is thus "being unjustly enriched … from the Shah's property," *id.* at ¶ 64.

These claims are patently groundless.

For example, Shah *knows* Vital never "promised" or "offered to pay Shah" *anything. But see* ECF No. 1 at p. 15. Shah does not even *allege* that Vital ever promised or offered to pay Shah anything. *See id.* (stating that "Maple, Riverstone, and Abbate" made offers regarding "*their* oil and gas" operations). Nor could he allege any offer or promise by Vital, because Vital was not in the picture and had nothing to do with the Property when Shah owned it. As Shah previously admitted in another case—and concedes again here—Vital had not "[e]ntered the picture" at that time. *Shah I*, at ECF No. 131 at 8-9, 20-21; *see also* ECF No. 1 at ¶ 23. Yet still, Shah baselessly includes Vital in the heading of this Count 1 claim—and thus forces Vital to expend resources to defend it—despite Shah's actual and conceded knowledge that Vital never made any such "promise" or "offer." This *is* frivolous because the claim lacks an arguable basis in fact. It lacks an arguable basis in law because—as this Court previously told Shah—it is legally "impossible" to trace any alleged injury to Vital:

> It is impossible for Shah to "fairly trac[e]" any injury related to the former Shah property [to Vital] because Vital did not conduct operations on the land until well after Maple obtained full ownership of the property.

*Shah I*, ECF No. 140 at 6.

These same defects are true of Shah's unjust enrichment claim—a theory he pleaded in *Shah I*, retracted after Vital moved to dismiss, but then reasserted in this case. With this claim too, Shah attempts to make Vital liable *only because* Vital conducts oil-and-gas operations on the Property today. Shah made the exact same argument in *Shah I*. But, again, this Court expressly told Shah that this argument lacks any arguable basis in law or undisputed fact:

> Therefore, Shah's claim, arising under Texas state law, must assert some injury during the time in which he owned the land.
>
> …
>
> [But] [a]t no point did Shah's ownership of the property overlap with Vital's operations, pursuant to their oil and gas interest in the land. Plaintiff's ownership in the land transferred to Maple Holdings, LLC seven months prior to Vital obtaining any interest in the land.

*Shah I*, ECF No. 140 at 5-6.

Shah did not appeal either of these basic, straightforward, and correct holdings. He instead sued Vital again, repackaging the same theories and forcing Vital and the Court to tell him why his theories fail *again for the same reasons as before.* In fact, Shah's briefing rehashes the same baseless arguments and issues.[7] This *is* a violation of Rule 11. At this point, Shah's repeated

---

[7] *See Shah I*, ECF No. 135 at 7-8, 11 (claiming standing because Vital *now* "possesses," "use[s]," or has "control over [his] *former land*") (emphasis added); 8-18 (speculating that Vital is somehow responsible for Maple's alleged past "surface damage payment liabilities [and more]."); 9, 11-12, 14 (asserting that Vital is somehow liable to Shah because it sought indemnification from Maple to avoid responsibility for Shah's litigiousness); 14 (claiming that his damages are traceable to Vital); 11-18 (arguing that Vital is currently damaging him despite Shah's lack of ownership or because the deed to Maple is invalid).

---

**Defendant Vital Energy, Inc.'s Motion for Sanctions**

attempts to re-litigate his claims and persistence in suing Vital no matter the lack of legal or factual support establish that Shah is filing these lawsuits to harass Vital in violation of Rule 11.

At the end of the day, Shah sues Vital only because it conducts oil and gas operations in connection with the Property today. But Shah cannot sue Vital—just like he cannot sue any future party that conducts oil and gas operations on the Property. Like Vital, none owe Shah any duty—because Shah does not own the Property—and Shah cannot simply sue whoever he pleases. Vital has now briefed these issues three times, in three cases. On this third iteration, there can be no dispute: "Even construing [Shah's] complaint liberally," his "claims are implausible, frivolous and devoid of merit." *Ratcliff*, 2017 WL 9325347, at *3. Absent sanctions, Shah will not stop.

## C.    The Court should issue monetary and other sanctions.

Given Shah's pattern and practice of abusive litigation against Vital and others relating to the Property, Vital respectfully submits that sanctions are appropriate. Federal courts recognize that "sanctions may be appropriate when a pro se litigant has a history of submitting multiple frivolous claims." *Id.* Shah has that history—and he has been warned—as numerous courts have recognized:

- The Eighth Court of Appeals noted that "Shah has raised many frivolous issues both in the trial court and on appeal, the circumstances of which are egregious ….";

- The New Jersey District Court commented that, "[c]learly [Mr. Shah's] litigiousness surrounding the Former Shah Property (and beyond) can only be described as unrelenting and abusive;" declared Shah a vexatious litigant; and issued a pre-filing injunction related to the Property, *Shah II*, 2025 WL 40164, at *10.

In this case, too, Shah filed a lawsuit asserting the same or similar theories that this Court already rejected—and merely two weeks after this Court rejected them. At this juncture, mere admonition will not stop Shah. Instead, Shah continues a baseless prosecution of Vital despite that Vital has nothing to do with Shah's grievances against *other* parties—and despite that, even

as to those parties, Shah's grievances are meritless in their own right.  *See* ECF No. 15 (Maple's Motion for Sanctions).

Accordingly, Vital respectfully requests that the Court award varying sanctions as the Court deems appropriate, including:

1. an order requiring Shah to pay a monetary penalty to the Court—and prohibiting future filings in this Court until the penalty is paid;

2. an order awarding Vital its reasonable and necessary attorneys' fees incurred in connection with motion to dismiss brief, to be proved up upon a subsequent schedule set by the Court;[8]

3. a warning that additional frivolous filings will be met with additional, more severe sanctions; and/or

4. an order directing Shah to show cause why he has not violated Rule 11(b).

These are all recognized remedies under Rule 11—and courts commonly issue multiple of them for litigants with a history of vexatious conduct, like Shah.  *E.g.*, *Ratcliff v. Tex.*, No. 9:15-CV-106, 2017 WL 9325347, at *5 (E.D. Tex. Feb. 13, 2017), report and recommendation adopted, No. 9:15-CV-106, 2017 WL 907992 (E.D. Tex. Mar. 7, 2017) (ordering plaintiff to pay defendant $4,200 in attorneys' fees and pay a "separate monetary penalty of $1500.00 … and order[ing] that the Clerk not accept any new filings from [the plaintiff] until the full monetary sanction is paid to the Clerk."), *aff'd*, 699 Fed. Appx. 410 (5th Cir. 2017); *Welsh v. Lamb Cnty.*, No. 5:20-CV-00024-H, 2024 WL 4203355, at *22 (N.D. Tex. Sept. 16, 2024) (issuing $500 penalty and barring further filings in the Court until paid and warning plaintiff that "it will impose more severe sanctions" if further frivolous filings are submitted); *Phillips*, No. AU-17-CV-940-SS, 2018 WL 1128147, at

---

[8] *E.g.*, *Kiggundu v. CWHEQ, Inc.*, No. A-16-CA-242-SS, 2016 WL 6534270, at *6 (W.D. Tex. Nov. 2, 2016) (ordering pre-filing injunction and monetary sanctions and directing defendants to "submit requests for attorneys' fees").  To date, Vital has incurred over $30,000 in attorneys' fees and costs in connection with motion to dismiss briefing in this matter.  That amount does not take into account the total reasonable and necessary attorneys' fees that Vital has incurred to defend Shah's baseless litigation against Vital in two other previous actions.

---

**Defendant Vital Energy, Inc.'s Motion for Sanctions**                                    **Page 14**

*3 (W.D. Tex. Mar. 1, 2018) (ordering repeat pro se offender to pay $2,500 in monetary sanctions to defendant in the form of reasonable and attorneys' fees and costs incurred in motion to dismiss briefing); *Annamalai*, 2017 WL 5646925, at *4 (issuing filing injunction and awarding attorneys' fees); *Kiggundu*, 2016 WL 6534270, at *6; *Hamad v. Ctr. for Study of Popular Culture*, No. A-06-CA-285-SS, 2007 WL 9701889, at *3 (W.D. Tex. Jan. 17, 2007) (ordering *pro se* plaintiff to pay defendants' attorneys' fees and costs, totaling approximately $40,000), *aff'd sub nom. Hamad v. Ctr. for Jewish Cmty. Studies*, 265 Fed. Appx. 414 (5th Cir. 2008); *Hick v. Bexar Cnty., Tex.*, 973 F. Supp. 653, 687-90 (W.D. Tex. 1997) (ordering *pro se* to pay monetary sanctions), *aff'd sub nom. Hicks v. Bexar Cnty.*, 137 F.3d 1352 (5th Cir. 1998); *Itz v. U.S. Tax Court*, No. A-86-CA-623, 1987 WL 15893, at *2 (W.D. Tex. May 6, 1987 (awarding monetary sanctions to defendant for *pro se* plaintiff's violation of Rule 11).

As the Fifth Circuit once remarked, "like any other pastime, recreational litigation has its price." *Gelabert v. Lynaugh*, 894 F.2d 746, 748 (5th Cir. 1990). The Court should fix that price through monetary and other sanctions that the Court deems appropriate.

**D.      Vital served this Motion on Shah in compliance with Rule 11's safe harbor provision—but Shah refused to retract his claims against Vital.**

Finally, Vital complied with Rule 11's safe harbor provision and offered Shah a chance to retract his claims against Vital—but Shah did not do so.

Under Rule 11's safe harbor provision, a motion for sanctions should "be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." Fed. R. Civ. P. 11(c)(2). This provision is intended to mitigate Rule 11 and grant a plaintiff the opportunity to withdraw claims that violate Rule 11 without involving the district court. *In re Pratt*, 524 F.3d 580, 587 (5th Cir. 2008) (citation omitted).

Vital offered Shah that chance.  It served this Motion—as written—on Shah on March 13, 2026, in compliance with Rules 5 and 11(c)(2).  As of today's date, Shah has not retracted his claims against Vital.  As a result, sanctions are appropriate.

### IV.   CONCLUSION

Shah's "wasting of increasingly scarce judicial resources must be brought to an end." *Mayfield v. Klevenhagen*, 941 F.2d 346, 348 (5th Cir. 1991).  Vital respectfully requests that the Court issue sanctions under Rule 11, including (1) a monetary penalty paid into the Court and a prohibition on future filings in this Court until the penalty is satisfied; (2) an award of attorneys' fees to Vital, with an order setting a deadline for Vital to prove up its reasonable and necessary fees; (3) an admonition that future frivolous filings will be met with additional, more severe sanctions; and/or (4) an order requiring Shah to show cause why he has not violated Rule 11(b).  Vital further requests any and all additional relief to which it may be entitled.[9]

---

[9] For example, Vital joins the Maple Defendants' Motion for Sanctions and requests that the Court declare Shah a vexatious litigant and issue the requested pre-filing injunction.  *See* ECF No. 15. This is also supported and proper.  "In addition to monetary sanctions, a court may 'impose a pre-filing injunction to deter vexatious, abusive, and harassing litigation.'" *Reyna v. Capital One Fin. Corp.*, No. 1:25-CV-01498-ADA-SH, 2025 WL 3134296, at *3 (W.D. Tex. Oct. 1, 2025), report and recommendation adopted, No. 1:25-CV-01498-ADA, 2025 WL 3132239 (W.D. Tex. Nov. 6, 2025) (citing *Baum v. Blue Moon Ventures*, 513 F.3d 181, 187 (5th Cir. 2008)).

Respectfully submitted,

*/s/ John R. Thompson, III*
John R. Thompson, III
john.thompson@kellyhart.com
Texas State Bar No. 24027917
Caitlyn E. Hubbard
caitlyn.hubbard@kellyhart.com
Texas State Bar No. 24097853
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Tele: (817) 878-3503
Fax: (817) 878-9280

**Attorneys for Defendant
Vital Energy, Inc.**

## CERTIFICATE OF SERVICE

I hereby certify that on April 8, 2026, a true and correct copy of the foregoing document was transmitted to *pro se* Plaintiff and all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

*/s/ Caitlyn E. Hubbard*
Caitlyn E. Hubbard

## CERTIFICATE OF CONFERENCE

I hereby certify that on March 13, 2026, a true and correct copy of the foregoing document was served on *pro se* Plaintiff via email to Plaintiff's email address and through certified mail to Plaintiff's mailing address, consistent with this Court's local rules and the safe harbor provision of Federal Rule of Civil Procedure 11. Appx.270-307. Plaintiff acknowledged receipt but disagreed that sanctions are warranted. Accordingly, Plaintiff is opposed to this Motion.

*/s/ John R. Thompson, III*
John R. Thompson, III